UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

PHILLIP A. TAYLOR,                                    :
                                                                          07 Civ. 8668 (PKC) (DF)
                                    Petitioner,          :

                  -against-                                  :        **REPORT AND
                                                                        RECOMMENDATION**

FRANK RIVERA, Superintendent,                 :

                                    Respondent.       :

--------------------------------------------------------------X

**TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

*Pro se* Petitioner Phillip A. Taylor ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of Attempted Robbery in the First Degree, in violation of N.Y. Penal Law §§ 110, 160.15[4], Attempted Robbery in the Second Degree, in violation of N.Y. Penal Law §§ 110, 160.10[1], and Criminal Possession of a Weapon in the Fourth Degree, in violation of N.Y. Penal Law § 265.01[1].  At the time he filed his habeas petition, he was incarcerated at the Wallkill Correctional Facility.[1]  On November 18, 2002, Petitioner was sentenced to concurrent terms of imprisonment of seven years on the first-degree attempted robbery count, three years on the second-degree attempted robbery count, and one year on the weapon possession count.

---

[1] According to the New York State Department of Correctional Services, Petitioner is currently incarcerated at Riverview Correctional Facility in Ogdensburg, New York.  *See* New York State Department Of Correctional Services, Inmate Population Information Search, http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130 (Search Last Name "Taylor"; First Name "Phillip"; DIN "02-R-6212").  It appears from this source that Petitioner had been released on parole, but was brought back into custody in October 2010, due to a violation of the terms of his release.

Petitioner raises 10 separate claims in his habeas petition. (*See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated Sept. 19, 2007 ("Petition" or "Pet.") (Dkt. 1).) The Superintendent of the Wallkill Correctional Facility ("Respondent") argues that the Petition should be dismissed in its entirety, on the grounds that the claims are procedurally barred and/or without merit. (*See* Affidavit in Opposition to Petition for Writ of Habeas Corpus, dated Mar. 4, 2008 (Dkt. 10), Memorandum of Law in Opposition to Petition ("Resp. Mem.").)[2]

For the reasons discussed below, I recommend that the Petition be dismissed.

## FACTUAL BACKGROUND

Based on the evidence presented by the prosecution at trial, on December 19, 2000, at approximately 1:30 a.m., Petitioner and codefendant Michelle Clark ("Clark") arrived at an Exxon gas station at 1419 Bruckner Boulevard in the Bronx in a Ford Explorer. (Trial Transcript, dated Oct. 15-24, 2002 (Dkt. 6) ("Trial Tr."), at 5-8.) Petitioner and Clark entered the store. (*Id*.) Martinez, a customer in the store, testified that Petitioner and Clark told everyone to stop what they were doing and put their hands up. (*Id*. at 199.) Martinez held the cans of oil he was holding in the air, and then Clark told him to give her whatever money he had. (*Id*.)

Petitioner approached the enclosed cashier booth, where Anthony Assan ("Assan") was working. (*See id*. at 10.) According to Martinez, Petitioner, who was holding a gun in his right hand pointed down, knocked on the cashier booth window and stated, "Give me the money, this is a holdup." (*Id*. at 193-94, 196, 206.) Assan noticed that Petitioner spoke twice, but "paid him

---

[2] Exhibits attached to the Affidavit in Opposition to Petition for Writ of Habeas Corpus are referred to by exhibit number.

no mind," as Assan could not hear the words through the bulletproof glass of the cashier booth. (*Id*. at 8-9.)  Assan had a clear view of Petitioner's face, as the lights in the store were bright and Petitioner was standing approximately two feet away.  (*Id*. at 10-12.)  Assan did not see that Petitioner was holding a gun.  (*Id*. at 16, 48-49.)

Assan, however, realized that something was happening when he noticed Martinez raise both his hands in the air multiple times, so Assan closed the door to the enclosed cashier booth and called 911.  (*Id*. at 8-11, 17.)  Petitioner and Clark then walked out of the station and drove away.  (*Id*. at 13-14, 200.)  Assan noted that Petitioner and Clark drove away in what he believed to be a green Ford Explorer, with license plate number CG400J. (*See id*. at 14, 46, 258.)  Police Officer Craig Horn arrived on the scene at approximately 1:38 a.m., and Assan and Martinez provided a description of the assailants and the Ford Explorer.  (*Id*. at 18-19, 201, 257-61.)  Officer Horn then sent out a radio transmission, including the license plate number of the Ford Explorer.  (*Id*. at 59-60, 262.)

Police Officer Orlando Rivera heard the radio transmission and conducted a search of the license plate number on the New York Department of Motor Vehicles database, which identified the owner of the vehicle as living in the vicinity of the 47th Precinct in the Bronx.  (*Id*. at 59-61.)  Officer Rivera canvassed that precinct and, at or around 2:50 a.m., saw a black Ford Explorer with the reported license plate number.  (*Id*. at 61-63.)  Officer Rivera stopped the truck and saw Petitioner in the driver seat and Clark in the front passenger seat.  (*Id*. at 66.)  Officer Rivera also saw a 12-gauge shotgun with a pistol handle and a shotgun shell in plain view on the rear seat.  (*Id*. at 66-67.)  Officer Rivera arrested Petitioner and Clark.  (*Id*. at 57-58.)  At a lineup later that morning, Asson identified Petitioner.  (*Id*. at 23-26.)  On October 10, 2002, Clark pleaded guilty

3

to Attempted Robbery in the Third Degree and was sentenced to a term of probation.  (*Id*. at 229-30.)

## PROCEDURAL HISTORY

### A.   Indictment and Pretrial Proceedings

On January 5, 2001, Petitioner was indicted by a grand jury for Attempted Robbery in the First Degree, in violation of N.Y. Penal Law §§ 110, 160.15[4], Attempted Robbery in the Second Degree, in violation of N.Y. Penal Law §§ 110, 160.10[1], Attempted Robbery in the Third Degree, in violation of N.Y. Penal Law §§ 110, 160.05, and Criminal Possession of a Weapon in the Fourth Degree, in violation of N.Y. Penal Law § 265.01[1].  On January 17, 2001, Petitioner filed a motion to dismiss the indictment, arguing that he was denied his right to testify before the grand jury.[3]  (Ex. 1.)  The state court denied the motion in a written Order dated April 5, 2001, finding the motion to be without merit.  (Ex. 3.)

According to Petitioner, at a proceeding that same day, at which Petitioner was not present, the court denied his *pro se* motion for a *Mapp* hearing,[4] but granted Petitioner two weeks to file additional supporting factual allegations to warrant a hearing.[5]  (Pet., at Point B.)

---

[3] This motion was initially filed *pro se*, but was subsequently adopted by Petitioner's appointed attorney.  (*See* Ex. 3.)

[4] The purpose of a hearing held pursuant *Mapp v. Ohio*, 367 U.S. 643 (1961), is to determine whether evidence was obtained in violation of a criminal defendant's Fourth Amendment right to be free from unreasonable search and seizure.

[5] Respondent does not dispute that the court made this ruling in a proceeding at which Petitioner was not present.  (Resp. Mem., at 10.)  It appears, however, that the Court's decision was memorialized in a written Order dated April 4, 2001.  (*See* Ex. 6.)

The court did hold a *Wade* hearing[6] (Pretrial Transcript, dated June 5, 2001 (Dkt. 7)

("6/5/01 Tr.")), after which the court denied Petitioner's motion to suppress his identification at

the lineup (Ex. 7).

### B.    Petitioner's Trial and Conviction

Petitioner was tried before a jury in New York Supreme Court, Bronx County.  As set out

above, the prosecution called Assan, Martinez, Officer Horn, and Officer Ramirez.  Clark,

though, had invoked her right not to incriminate herself, and the prosecution read Clark's plea

allocution into the record.  (*See* Trial Tr., at 229-36.)  Petitioner did not testify on his own behalf

or call any witnesses.

At the close of the evidence, Petitioner moved to dismiss based on the purported

insufficiency of the evidence against him, and the court denied that motion.  (*Id*. at 266-67.)  On

the prosecution's motion, the court dismissed the charge of attempted robbery in the third

degree.  (*Id*.)  The remaining charges were submitted to the jury and, on October 24, 2002,

Petitioner was convicted of attempted robbery in the first degree, attempted robbery in the

second degree, and criminal possession of a weapon in the third degree.  (*Id*. at 337-38.)  On

November 18, 2002, Petitioner was sentenced, as noted above, to concurrent terms of

imprisonment of seven years on the count of attempted robbery in the first degree, three years on

the count of attempted robbery in the second degree, and one year on the count of criminal

possession of a weapon in the third degree.  (*See* Ex. 10.)

---

[6] This hearing was held pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to
determine whether Petitioner's pretrial identification was the result of impermissibly suggestive
procedures.

### C.     Petitioner's First Motion To Vacate the Judgment Pursuant to N.Y.C.P.L. § 440.10

On November 7, 2002, prior to sentencing, Petitioner filed a *pro se* motion in the trial

court pursuant to Section 440.10 of the New York Criminal Procedure Law, seeking to vacate

the judgment on the grounds that:  (a) his placement in a lineup without an attorney present

violated his right to due process; (b) his search, seizure, and arrest were illegal; (c) the

destruction of a 911 tape was a violation of the state *Rosario* rule;[7] (d) Petitioner's trial counsel

was ineffective because he attempted to have Petitioner plead guilty, failed to inform Petitioner

of pretrial motions filed on his behalf, failed to conduct any investigation, and failed to move for

a bail reduction; (e) the prosecutor engaged in misconduct; and (f) Petitioner's right to a speedy

trail was violated.  (*See* Ex. 8.)

The court denied Petitioner's motion in its entirety on April 2, 2003.  (Ex. 10.)  First, the

court held that the motion should be summarily denied as "all of the facts alleged by the

[Petitioner] relate to matters on the record which could have been raised on direct appeal."  (*Id*.)

The court stated that Petitioner's motion was "also denied" on the ground that his ineffective

assistance of trial counsel claim was meritless:

> [Petitioner] has failed to demonstrate that trial counsel was
> deficient or that [Petitioner] was deprived fo a fair trial by less
> than meaningful representation.  This Court presided over
> [Petitioner's] case and was in a position to evaluate counsel's
> performance at each stage of the proceedings.  There was and is
> nothing to suggest that trial counsel provided [Petitioner] with
> anything other than skilled and effective representation.  Trial
> counsel conducted an effective voir dire, made an appropriate

---

[7] In *People v. Rosario*, 9 N.Y.2d 286 (1961), the New York Court of Appeals held that a criminal defendant is entitled to examine any prior statement of a witness called by the prosecution, where the prior statement relates to the subject matter of the witness' testimony. 9 N.Y.2d at 289-91.  That rule was later codified in N.Y.C.P.L. § 240.45(1)(a).

opening statement, conducted effective cross-examination of the witnesses and delivered an effective summation.

(*Id*. at 4.)

Petitioner sought leave to appeal to the Appellate Division, which was denied on July 31, 2004.  (Ex. 11.)

### D.   Direct Appeal

On direct appeal to New York Supreme Court, Appellate Division, Petitioner's assigned counsel raised two claims on behalf of Petitioner, specifically (1) that the trial court's admission of Clark's plea allocution violated the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004), and (2) that the trial court's admonishment of the jury, without Petitioner's presence, violated his right to be present at trial.  (*See* Ex. 12.)  Petitioner filed a *pro se* application requesting copies of grand jury minutes and pretrial and trial transcripts, and seeking leave to file a *pro se* supplemental brief in support of his direct appeal, raising numerous claims, including a challenge to the trial court's denial of his Section 440.10 motion.  (*See* Ex. 13.)  The Appellate Division granted Petitioner's application in part and denied it in part, permitting him to raise claims other than for ineffective assistance of trial counsel,[8] directing the Clerk provide Petitioner with a copy of transcripts relating to Petitioner's appeal, and denying his request to the extent it sought to enlarge the record to include grand jury minutes.  (Ex. 15.)

In January 2006, Petitioner filed a *pro se* supplemental brief, asserting that:  (a) the police illegally searched his vehicle and arrested him without probable cause; (b) he was deprived of his right to effective assistance of counsel at a critical stage of trial when he was forced to

---

[8] Petitioner had identified certain ineffective assistance claims that he sought to raise on direct appeal; these appear to have been the same claims that he asserted in his first Section 440.10 motion.  (*See* Ex. 13.)

7

participate in a pretrial lineup without an attorney; (c) the admission of the identification of

Petitioner in the lineup violated the rule in *Kirby v. Illinois*, 406 U.S. 682 (1972); (d) the trial

court's decision to give an adverse inference charge as a result of the destruction of a 911 tape

was not a proper sanction; (e) the proof that Petitioner committed attempted robbery in the first

degree was legally insufficient; (f) Petitioner's right to be present was violated when he was

excluded from a proceeding pertaining to his omnibus motion; and (g) his right to a speedy trial

was violated.  (*See* Ex. 16.)

The Appellate Division unanimously affirmed Petitioner's conviction on May 23, 2006.

(Ex. 18.)  In pertinent part, the Appellate Division found that Petitioner's *Crawford* claim was

unpreserved but, in any event, harmless "even under the standard for constitutional error," and

that Petitioner was not prejudiced by the trial court's standard instructions to the jury outside of

his presence, as they were "wholly unrelated to the substantive legal or factual issues of the

trial."  (*Id*.)  The Appellate Division also stated that it had "considered and rejected" the claims

raised in Petitioner's *pro se* supplemental brief.  (*Id*.)

On June 12, 2006, Petitioner filed a *pro se* motion with the Appellate Division, seeking to

reargue or, in the alternative, for leave to appeal to the New York Court of Appeals from the

Appellate Division's denial of his substantive claims, as well as from the Appellate Division's

earlier ruling that had restricted the scope of Petitioner's *pro se* submissions and denied his

request to enlarge the record.  (*See* Ex. 19A, at 4.)  On June 15, 2006, however, Petitioner's

counsel submitted a letter to the Court of Appeals, seeking leave to appeal to that court based on

all of the claims raised both in the appellate brief that had been submitted by counsel and in

Petitioner's *pro se* supplemental brief.  (*See* Ex. 23.)   At that point, Petitioner apparently

attempted to withdraw his request to the Appellate Division for leave to appeal (Ex. 19B), although Petitioner refiled his motion for reargument (Ex. 20).

On August 17, 2006, the Court of Appeals denied Petitioner leave to appeal. *People v. Taylor*, 7 N.Y.3d 818 (2006).  Then, on October 17, 2006, the Appellate Division denied Petitioner's motion for reargument.  (Ex. 22.)  Further, even though Petitioner had seemingly tried to withdraw the motion for leave to appeal that he had directed to the Appellate Division (prior to his counsel's directing another such application to the Court of Appeals), the Appellate Division rejected that motion by Petitioner as well.  (*See id*.)

On November 14, 2006, Petitioner filed a *pro se* petition for writ of certiorari to the United States Supreme Court.  *Taylor v. New York*, No. 06-7907 (Dkt. 1).  That petition was denied on March 19, 2007.  (Ex. 24.)

### E.   Petitioner's Second Motion To Vacate the Judgment Pursuant to N.Y.C.P.L. § 440.10

On December 4, 2006, Petitioner filed a second motion to vacate his judgment pursuant to New York Criminal Procedure Law Section 440.10.  (Ex. 25.)  In that motion, Petitioner claimed that he was deprived of effective assistance of trial counsel, as his counsel had allegedly failed to consult with him during critical stages of the pretrial proceedings, failed to prepare adequately for trial, failed to raise a claim that Petitioner was illegally detained, failed to move to dismiss the indictment for violation of Petitioner's right to speedy trial, failed to preserve constitutional errors, and intentionally rendered assistance to the prosecution.  (*See id*.)

The trial court issued a decision on May 4, 2007, denying Petitioner's motion.  (Ex. 27.) The court initially observed that certain of Petitioner's arguments were duplicative of those raised and rejected in his first Section 440.10 motion, although it is unclear whether the court

opted to deny any of Petitioner's claims on that ground, as the court went on to reject

Petitioner's claims as unsupported by the record and meritless.  (*See id*.)  In particular, the court

noted that Petitioner's argument concerning his trial attorney's withdrawal of his objection to the

admission of Clark's plea allocution was mooted by the Appellate Division's finding that any

error in the admission of the allocution was harmless, and that Petitioner had not demonstrated

that he had a viable speedy trial claim.  (*See id*.)  The court also stated that, in general,

Petitioner's moving papers did "not allege any ground constituting legal basis for the motion."

(*Id*. at 5.)

Petitioner sought leave to appeal the trial court's decision to the Appellate Division, and

that application was denied on July 5, 2007.  (Ex. 28.)

### F.   **Petitioner's Motion for a Writ of Error *Coram Nobis***

Petitioner filed a *pro se* motion with the Appellate Division for a writ of error *coram*

*nobis* on January 17, 2007.  (Ex. 29.)  Petitioner argued that his appellate attorney was

ineffective because, on direct appeal, he failed to assert a number of claims of ineffective

assistance of trial counsel.  Specifically, Petitioner argued that his appellate counsel should have

challenged trial counsel's purported failures to submit a timely affirmation in support of a *Mapp*

hearing; to prepare for trial or to withdraw as counsel; to maintain his objection to the admission

of Clark's plea allocution; to avoid the conflict of interest that, according to Petitioner, arose

from entering into a stipulation with the prosecutor; to advise Petitioner that he could testify at

trial; to request a specific identification charge; to object to certain jury instructions; to object to

hearsay testimony by Officer Horn; to seek any remedy when the prosecution did not turn over

Officer Horn's memo book and handwritten statements; to move for a mistrial or to reopen the

*Wade* hearing; and to reargue to dismiss the indictment.  (*See id*.)

10

On June 19, 2007, the Appellate Division denied Petitioner's motion (Ex. 31), and, on September 7, 2007, the New York Court of Appeals denied Petitioner's application for leave to appeal (Ex. 32).

### G.   Petitioner's Federal Habeas Petition

Petitioner filed his federal habeas Petition on September 19, 2007.[9]  In this Court, Petitioner asserts 10 claims, alleging that:

> 1.   Petitioner's due process and equal protection rights were violated by limitations imposed by the Appellate Division in granting Petitioner leave to file a *pro se* supplemental brief in support of his direct appeal, and by the court's denial of Petitioner's request to enlarge the record;

> 2.   Petitioner was denied the right to be present at all critical stages of the proceedings;

> 3.   Petitioner's due process rights were violated as the indictment was defective;

> 4.   Petitioner was denied the effective assistance of trial counsel on numerous grounds;

> 5.   Petitioner was denied the effective assistance of appellate counsel by his attorney's failure to raise an ineffective assistance of trial counsel claim on direct appeal;

> 6.   the evidence was not legally sufficient to support Petitioner's conviction of attempted robbery in the first degree;

---

[9] Although the Court's docket reflects a filing date of October 9, 2007, a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), and this Court will therefore deem the Petition to have been filed on September 19, 2007, the date when Petitioner declared under penalty of perjury that he delivered the Petition to prison authorities to be mailed to the Court, *see, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).

7.      Petitioner's due process rights were violated by the trial court's sanction for the prosecution's destruction of a tape recording of a 911 call;

8.      Petitioner's right to confront any witness testifying against him was violated by the introduction of a plea allocution by a codefendant;

9.      Petitioner was denied his right to counsel at a pretrial lineup; and

10.     Petitioner's right to present a complete defense was violated by the exclusion of a videotaped statement by a codefendant.

(*See generally* Pet.)[10]  On December 30, 2008, Respondent opposed the Petition by filing an Affidavit in Opposition to Petition for Writ of Habeas Corpus (Dkt. 7), together with a memorandum of law, exhibits, and the transcripts of Petitioner's pretrial proceedings and trial.

## DISCUSSION

## I.      APPLICABLE LEGAL STANDARDS

### A.      Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A) (2000); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (citations omitted) (judgment becomes

---

[10] The Court has numbered the claims for ease of reference. Although the Petitioner has used various numbering schemes, this is, for the most part, the order in which he has presented his claims in his Petition.  The only exceptions are that one aspect of what this Court has referred to as Petitioner's second claim is addressed somewhat later in the Petition than the remainder of that claim (*see* Pet., at 69; *see also id.* at Point B), and the claim referred to herein as Petitioner's 10th claim is mentioned by Petitioner in the middle of his discussion of his ineffective assistance of trial counsel claim (*see id.* at 40).

"final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").[11]

In this case, even exclusive of any tolling of the statute of limitations that may have resulted from Petitioner's state-court motions for post-conviction or other collateral review, *see* 28 U.S.C. § 2244(d)(2), Petitioner's claims are timely because his Petition was filed within one year of the denial by the Supreme Court of the petition for a writ of certiorari in Petitioner's direct appeal, which is the date Petitioner's conviction became final for purposes of habeas review, *see id.* at § 2244(d)(1)(A).

### B.    Exhaustion

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Doresy v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass upon and correct alleged violations of . . . prisoners' federal rights."  *Picard*, 404 U.S. at 275 (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  There are several ways by which a

---

[11] The limitations period may alternatively begin to run on the following dates:  (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

petitioner can fairly present a federal claim to the state appellate court, including by citing the relevant provisions of the federal Constitution in his appellate brief. *See Davis v. Strack*, 270 F.3d 111 (2d Cir. 2001).

Once the state courts are appraised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted). A petitioner will be found to have satisfied this requirement where, with his letter seeking leave to appeal, he submits a copy of his brief to the lower appellate court, and the "fair import" of the total application suggests a request for review of the constitutional claims raised in that brief. *Galdamez v. Keane*, 294 F.3d 68 (2d Cir. 2005).

C.    **Standard of Review**

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA. *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result.  *Williams*, 529 U.S. 362, 405-06 (2000).[12]  An "unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced."  *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003).  The state court's decision, however, "must have been more than incorrect or erroneous" –  rather, "[t]he state court's application must have been 'objectively unreasonable.'"  *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409).  In other words, the state court's ruling must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond

---

[12] The Supreme Court has emphasized that "clearly established [f]ederal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412); *see also Rodriguez v. Miller*, 537 F.3d 102, 107 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes.").  Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief.  *Rodriguez*, 537 F.3d at 106-07 (citing *Musladin*).

15

any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

Where the state court has not reached the merits of a petitioner's claim, then this Court will consider the claim under a *de novo* standard of review.

## II.   PETITIONER'S CLAIMS

### A.   Claims That Are Procedurally Barred From Review by This Court

This Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)). "This rule applies whether the state law ground is substantive or procedural." *Id.*

To determine whether the state law ground on which the state court rested was "truly an *independent* basis for [the] decision or merely a passing reference, such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (internal quotation marks and citation omitted); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (explaining that, "in order to preclude federal review, the last state court to render judgment must clearly and expressly state that its judgment rested on a state procedural bar") (internal quotation marks and citation omitted). To be deemed *adequate*, the state procedural rule on which the court's decision was based must be a rule that is "firmly established and regularly followed" by the state in question, *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991), and that has not been "misapplied in [the petitioner's] case in particular." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007) (the relevant

inquiry is whether "the state rule at issue . . . is firmly established and regularly followed");

*Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (holding that a state procedural bar is

"adequate" if it "is firmly established and regularly followed by the state in question" in the

specific type of circumstances presented) (citation omitted).

A claim may also be procedurally barred from federal habeas review if it is unexhausted,

but "deemed" exhausted because, under the state's procedural rules, the petitioner no longer has

recourse to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Grey v. Hoke*,

933 F.2d 117, 120-21 (2d Cir. 1991).  When a claim is deemed exhausted because of such a

procedural bar, "the procedural bar that gives rise to exhaustion provides an independent and

adequate state-law ground for the conviction and sentence, and thus prevents federal habeas

corpus review of the defaulted claim."  *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations

omitted).

Here, four of Petitioner's claims have been procedurally defaulted:  his Confrontation

Clause claim (Petitioner's eighth-pleaded claim), which was decided by the state court on an

independent and adequate state-law ground, and three claims – that his due process rights were

violated as a result of an allegedly defective indictment (Petitioner's third-pleaded claim); that

his right to effective assistance of trial counsel was violated by his counsel's failure to secure the

trial court's admission of a videotaped statement by Clark (a portion of Petitioner's fourth-

pleaded claim); and that his right to a complete defense was violated by the trial court's

exclusion of that videotaped statement (the claim referred to herein as Petitioner's 10th claim) –

which are unexhausted, but should be deemed exhausted at this juncture.

1.   **Petitioner's Unpreserved Confrontation Clause Claim**
     **(Petitioner's Eighth Claim)**

Petitioner claims that his right to confront any witnesses against him under the Sixth

Amendment was violated by the prosecution's introduction into evidence of Clark's plea

allocution.  (*See* Pet., at 72.)  This claim, which was raised by appellate counsel on behalf of

Petitioner in his direct appeal, was rejected by the Appellate Division as unpreserved.  (Ex. 18.)

As the Appellate Division explained, "defendant never objected, on constitutional grounds, to

the admission of a nontestifying codefendant's plea allocution, and since, in any event, he

withdrew his objection completely, his Confrontation Clause claim is unpreserved and we

decline to review it in the interest of justice."  (*Id*.)

a.   **The State Court Rejected the Claim on an**
     **Independent and Adequate State Law Ground**

By expressly holding that Petitioner had failed to preserve his Confrontation Clause

claim, the Appellate Division made clear, from the face of its decision, that it was relying on the

state-law preservation requirement as a ground for rejecting this claim.  Thus, the Appellate

Divsision's rejection of this claim rested on an "independent" state ground.  *See Fama*, 235 F.3d

at 809.[13]  Moreover, the state procedural rule at issue is firmly established in New York state law

and regularly followed, and hence provided an "adequate" basis for the court's decision.  The

federal courts have repeatedly held that the denial of an appeal for failure to raise the issue at

trial represents the application of a "firmly established and regularly followed" state law.  *See,*

---

[13] The mere fact that the Appellate Division also held that, were it to review this aspect of Petitioner's claim, it would find it to be without merit (Ex. 18), does not alter the fact that the claim is procedurally barred, *see Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (where a state court expressly relies on a procedural default in rejecting the claim, but also notes that it would reject the claim on the merits as well, federal habeas review remains procedurally barred).

*e.g., Salcedo v. Artuz*, 107 F. Supp. 2d 405, 413 (S.D.N.Y. 2000) (failure to object to jury instructions was an independent and adequate state ground for the appellate court's rejection of the claim); *see also generally Velasquez*, 898 F.2d at 9 (New York's "contemporaneous objection" rule was adequate and independent state ground); *Wainwright v. Sykes*, 433 U.S. 72 (1977) (federal habeas claim is not cognizable where the petitioner waived it procedurally in the state court).[14]  Further, Petitioner has not shown that the state procedural rule in question was misapplied in his case in particular.  *See Cotto*, 331 F.3d at 240.

Accordingly, the state-law ground on which the appellate court decided Petitioner's Confrontation Clause claim was both independent and adequate to support the court's decision, precluding federal habeas review.

### b.      Petitioner Cannot Overcome the Procedural Bar

Petitioner can overcome the procedural bar to this Court's review of his challenge to the introduction of Clark's plea allocution only if Petitioner can demonstrate "cause and prejudice for the default," *Gray*, 518 U.S. at 162 (citations omitted), or that "failure to consider the [defaulted] claim will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750 (internal quotations omitted).  Petitioner has not satisfied either standard.

---

[14] Under New York law, a defendant must make a timely objection before the trial court in order to preserve that objection for appellate review.  *See* N.Y. Crim. Proc. § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."); *see also People v. Balls*, 69 N.Y.2d 641, 642 (1986); *People v. Newton*, 644 N.Y.S.2d 708, 709 (1st Dep't 1996).

### i.   Lack of "Cause" and "Prejudice"

Generally, "cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). More specifically, cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) "'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (internal citation omitted). "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's "*actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Here, Petitioner has shown neither "cause" nor "prejudice" for his procedural default. With respect to cause, Petitioner asserts that he could not have raised his *Crawford*-based Confrontation Clause claim at trial, as *Crawford* had not yet been decided at that time. (*See* Pet., at 73.) This argument fails, as nothing precluded Petitioner from raising the same type of constitutional objection as was raised in *Crawford*. *See Gonzalez v. Lape*, No. 09 Civ. 4021 (RJD), 2011 WL 208407, at *4 (E.D.N.Y. Jan. 21, 2011) (holding that the fact that petitioner's trial occurred prior to *Crawford* did not excuse petitioner from making proper constitutional objection at trial). Petitioner also asserts that, to the extent his claim was not adequately preserved, the lack of preservation can be attributed to ineffective assistance of counsel. (*See* Pet., at 73.) This argument for "cause" also fails, however, as, even if Petitioner's Confrontation Clause claim would have been meritorious, and even if his trial counsel should have raised a constitutional objection to the admission of the Clark plea allocution, Petitioner cannot now

20

show a "reasonable probability" that, but for counsel's failure to raise the claim at trial, the outcome of Petitioner's trial would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).  As set out below, Petitioner's ineffective assistance of counsel claim therefore lacks merit (*see infra* at 43-44), and Petitioner cannot rely on it as a basis to excuse his procedural default, *see Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir. 2001) (noting that defense counsel's failure to preserve a claim for review "can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel").

For similar reasons, Petitioner cannot show the requisite "prejudice" to excuse his default.  Clark's plea allocution was admitted as evidence that Petitioner was "aided by another person present," N.Y. Penal Law § 160.10[1], as required to support Petitioner's conviction for attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110, 160.10[1].  In particular, the trial court instructed the jury that Clark's plea allocution was not admitted "for the truth or for the falsity, but rather for the purposes of determining whether she acted in concert with another person, in connection with any of the crime charged here."  (Trial Tr., at 311-12.)  The prosecution's case as to attempted robbery in the second degree (and, more specifically, as to Petitioner being aided by another person present) was independently strong, however, and, in this regard, Clark's plea allocution was well-corroborated by other evidence.  As set forth in more detail above (*see* at 2-3), Assan testified to an attempted robbery by two individuals, and he identified Petitioner as one of the assailants at both a lineup and at trial.  (Trial Tr., at 23-26.)  Martinez further corroborated Assan's testimony regarding the involvement of two individuals, as well as the sequence of events.  (*See id*. at 193-96.)  In addition, according to the testimony at

21

trial, Petitioner was apprehended with Clark, in a vehicle of the make and model and bearing the license plate number that Assan provided to the police.  (*See id*. at 55-67.)

Taking the record as a whole, this Court cannot conclude that any constitutional error committed by the trial court in admitting Clark's plea allocution would have worked to Petitioner's "actual and substantial disadvantage" at trial.  *Frady*, 456 U.S. at 170.[15]

### ii.      No "Fundamental Miscarriage of Justice"

Nor has Petitioner demonstrated a sufficient probability that this Court's failure to review his defaulted Confrontation Clause claim would result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750).  This exception to the procedural bar is quite narrow; it is "concerned with actual as compared to legal innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  To meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Carrier*, 477 U.S. at 496.  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

---

[15] For essentially the same reasons, if this Court were to reach the merits of Petitioner's Confrontation Clause claim, the Court would conclude that, even if the trial court's admission of Clark's plea allocution constituted constitutional error, such error was harmless.  *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004) (noting that Confrontation Clause violations are subject to harmless error analysis (citing *Coy v. Iowa*, 487 U.S. 1012 (1988)); *Fry v. Pliler*, 551 U.S. 112 (2007) (holding that, in § 2254 habeas proceedings, a court must assess the prejudicial impact of constitutional error under the "substantial and injurious effect" harmless-error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).  Similarly, if the Court were to apply AEDPA's deferential standard to the Appellate Division's conclusion that any constitutional violation here would have been harmless, the Court again would have no basis to disturb the Appellate Division's finding.  (*See* Ex. 18; *see also Perkins v. Herbert*, 596 F.3d 161, 175-76 (2d Cir. 2010).)

"Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316. "The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id*. at 327 (citations omitted). It is extremely rare that a petitioner will be able to satisfy the actual innocence standard. *See id.* at 324 ("in virtually every case, the allegation of actual innocence has been summarily rejected." (citation omitted)). Here, Petitioner has not submitted any new evidence showing that he is actually innocent.[16]

For all of these reasons, I recommend that Petitioner's Confrontation Clause claim be dismissed as procedurally barred.

## 2.    Unexhausted Claims

In his habeas Petition, Petitioner pleads three claims that he failed to exhaust in the state courts. As none of these claims can now be raised before the state courts because of state

---

[16] Although Petitioner asserts a claim in this habeas proceeding that the evidence was legally insufficient to support his conviction of attempted first-degree robbery, this claim, even if meritorious, would not be sufficient to support a finding of "actual innocence." *See Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002); *Garbutt v. Conway*, 05 Civ. 9898 (SHS), 2009 WL 2474099, at *3 (S.D.N.Y. Aug. 12, 2009); *Edwards v. Fischer*, 414 F. Supp. 2d 342, 352-53 (S.D.N.Y. 2006); *but see Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir. 2002) (acknowledging that actual innocence "'means factual innocence, not mere legal insufficiency,'" but still finding that the determination of actual innocence "depends on the evidence at trial and its sufficiency"). Moreover, actual innocence means "entire" innocence, not just innocence of the particular charge on which the petitioner was convicted. *See Garbutt,* 2009 WL 2474099, at *3 ("As the Supreme Court has explained, the fundamental miscarriage of justice exception is 'tied . . . to a petitioner's innocence' and exists to protect those who are "*entirely* innocent." (quoting *Schlup*, 513 U.S. at 321, 325 (emphasis added))); *but see Fernandez v. Smith*, 558 F. Supp. 2d 480, 494 (S.D.N.Y. 2008) (reviewing unpreserved insufficiency of the evidence claim because refusing to review that claim would result in a "fundamental miscarriage of justice" even though petitioner was "surely . . . guilty of manslaughter").

procedural rules, all should be deemed exhausted and procedurally defaulted.  Further, as

Petitioner cannot show an adequate basis to overcome the procedural bar to this Court's

consideration of any of these three claims, each should be dismissed as defaulted.

**a.      Due Process Claim Challenging
Allegedly Defective Indictment
(Petitioner's Third Claim)**

Petitioner's first unexhausted claim (his third habeas claim) appears to challenge the

sufficiency of the indictment returned by the grand jury and the alleged denial of his right to

testify before the grand jury.  Specifically, Petitioner claims that his due process rights were

violated because of the "two-stage" process by which he was indicted:  the grand jury voted a

true bill on December 28, 2000, and then voted a true bill as to additional charges on

January 2, 2001.  (*See* Ex. 2.)  According to Petitioner, the result of this process was that he was

denied to opportunity to testify before the grand jury with respect to the second set of charges.

(Pet., at Point C.)  As Petitioner did not raise this challenge to the indictment before the trial

court or on direct appeal,[17] this claim is unexhausted.

No current avenues are available for Petitioner to exhaust his claim.  He could have

raised this claim on direct appeal, but he did not do so, and he is not now entitled to a second

direct appeal.  *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (finding that remedies in

New York State courts were no longer available where "[petitioner] has already taken his one

direct appeal, and [his] claim is procedurally barred from consideration in a collateral attack on

---

[17] In the trial court, Petitioner filed a *pro se* motion to dismiss the indictment, but that
challenge was based on an alleged deprivation of the right to testify before the grand jury under
New York Criminal Procedural Law § 190.50, prior to his initial indictment on
December 28, 2000.  (Ex. 2.)  In any event, even if that motion could be read to raise the same
claim as Petitioner seeks to raise here, it would not be fully exhausted, as, on his direct appeal,
Petitioner failed to challenge the trial court's denial of that motion.

24

his conviction"), *cert denied*, 166 L. Ed. 2d 740 (2007).  Petitioner is also foreclosed from

raising the claims collaterally in a Section 440.10 motion.  *See* N.Y. Crim. Proc. L.

§ 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal).

Nor can he seek state review of this claim pursuant to either a writ of error *coram nobis*, *see*

*People v. Gordon*, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for

claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas

corpus, *see People ex rel. Allah v. Leonardo*, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of

habeas corpus unavailable where claim could have been raised on direct appeal) (citations

omitted).  As Petitioner thus has no procedural recourse to New York's courts to advance this

unexhausted claim, the claim should be deemed exhausted.

In order to overcome the resulting procedural bar, Petitioner would have to show either

"cause" for his procedural default and "prejudice" resulting therefrom, *Gray*, 518 U.S. at 162

(citations omitted); *accord Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 633

(2d Cir. 2001) (citations omitted), or that this Court's failure to consider the claim would result

in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750 (internal quotation marks

and citations omitted).  In this instance, Petitioner has shown no basis for overcoming the

procedural bar.  He has advanced no explanation as to why he failed to exhaust this claim, and he

cannot show prejudice, as this claim could not be successful on its merits.

A claim for denial of the right to testify before the grand jury is not, itself, cognizable in

a federal habeas proceeding.  *Davis v. Mantello*, 42 Fed. App'x 488, 490 (2d Cir. 2002).  Rather,

the "sufficiency of an indictment cannot form the basis for a writ of habeas corpus unless the

indictment falls below basic constitutional standards."  *Carroll v. Hoke*, 695 F. Supp. 1435, 1438

(E.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989).  An indictment is constitutionally

sufficient when "it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and "it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). Thus, claims based on a defective indictment are only reviewable "if the indictment fails to satisfy the basic due process requirements: notice of "the time, place, and essential elements of the crime." *Id.* (citing *Carroll*, 695 F. Supp. at 1435). As Plaintiff does not argue that the indictment failed to provide him with notice of the time, place and essential elements of the criminal charges, his claim would not even be cognizable on federal habeas review.

Finally, as discussed above, Petitioner has made no showing of actual innocence, so as to justify this Court's consideration of his procedurally defaulted claim. Accordingly, I recommend that this claim be dismissed.

### b.   Ineffective Assistance of Trial Counsel for Failing To Secure Admission of Clark's Videotaped Statement (Included as Part of Petitioner's Fourth Claim)

Petitioner's second unexhausted claim (included as part of Petitioner's fourth habeas claim, which alleges ineffective assistance of trial counsel on numerous grounds) challenges the adequacy of Petitioner's counsel in failing to make sufficient efforts to introduce, at trial, a videotaped statement of Petitioner's codefendant, Clark. (*See* Pet., at 40.) According to trial counsel, in that statement, Clark informed the police that the person who was with her when she attempted to rob the gas station had stayed behind, inside the car. (Trial Tr., at 223.) Petitioner argues that the statement was exculpatory and that his trial counsel should have secured its admission. (*See* Pet., at 40.)

In Petitioner's two Section 440.10 motions, Petitioner raised a host of claims challenging the conduct of his trial counsel, and he sought to raise certain of those claims again on his direct appeal.  It does not appear, however, that he ever raised, or attempted to raise, this *particular* ineffective assistance claim before any state court, at any time; thus the claim remains unexhausted.  As the extent of counsel's efforts to introduce Clark's statement into evidence would have been apparent from the face of the trial record, the claim would have been appropriate for direct review.  Yet, as Petitioner no longer has an opportunity to seek direct review of the claim, this unexhausted claim should be deemed exhausted.  *See* N.Y. Crim. Proc. § 440.10(2); *see also Sweet v. Bennett,* 353 F.3d 135, 140 (2d Cir. 2003) (deeming an ineffective assistance claim exhausted where the petitioner failed to raise the claim on direct appeal "despite a sufficient record, and, consequently[,] waived the claim under § 440.10(2)(c)"); *Ortiz v. Heath,* No. 10 Civ. 1492 (KAM), 2011 WL 1331509, at *8 (E.D.N.Y. April 6, 2011) ("[B]ecause petitioner's . . . ineffective assistance of counsel claims [based on trial counsel's on-the-record conduct] would now be denied by New York courts pursuant to Section 440.10(2)(c), and because such a denial would constitute an independent and adequate state procedural bar, petitioner's on-the-record ineffective assistance claims are deemed exhausted").

The resulting procedural bar may not be excused, as Petitioner has not shown cause for his failure even to attempt to raise this claim on direct appeal, and has also not demonstrated that he would suffer prejudice if his procedural default were not excused.  Indeed, Petitioner has not shown that this claim has any merit whatsoever, given that his counsel *did* attempt to introduce Clark's statement at trial.  (*See* Trial Tr., at 222-24.)  In light of those efforts, counsel's conduct could not be said to meet the stringent test for ineffective assistance articulated by *Strickland,* as Petitioner would not be able to show that his attorney's conduct "fell below an objective

27

standard of reasonableness," *id.* at 686; *see also infra* at 38-39.   Moreover, the trial court's determination that the evidence was appropriately excluded appears to have been correct, as Petitioner sought to introduce Clark's out-of-court statement for the truth of the matter asserted. (*See* Trial Tr., at 222.)   Contrary to Petitioner's argument at trial, Clark's alleged statement that the person who was with her did not leave the car was not, in itself, a statement against Clark's own interest, *see People v. Settles*, 46 N.Y.2d 154, 167 (1978) ("To qualify for admission into evidence as a declaration against the maker's penal interest . . . when the statement was made[,] the declarant must [have been] aware that it was adverse to his penal interest"), nor a business record, *see Matter of Leon RR*, 48 N.Y.2d 117, 122-23 (1979) (for statements by an informant recorded by the police to qualify as a business record, "the informant must be under a contemporaneous business duty to report the occurrence").   Finally, even if the statement had been admitted into evidence, it would have been contradicted by the testimony of Assan, who placed Petitioner in the gas station and described him as having been an active participant in the attempted robbery.   Consequently, Petitioner cannot demonstrate that a different ruling on the hearsay issue would likely have altered the outcome of his trial.

Finally, Petitioner has again failed to show that, unless the procedural bar is excused, Petitioner would suffer a fundamental miscarriage of justice.   For all these reasons, this claim should also be dismissed as procedurally barred.

### c.   Alleged Denial of the Right To Present a Complete Defense (Petitioner's 10th Claim)

Finally, Petitioner's third unexhausted claim (which he does not separately list in his Petition, but which – affording the Petition a liberal construction – should be found to be contained therein, and which the Court has thus identified as Petitioner's 10th claim) asserts that

he was deprived of his right to present a complete defense by the trial court's exclusion of Clark's videotaped statement.  (*See* Pet., at 40.)

Petitioner failed to raise this claim on his direct appeal, and cannot raise it now in the state courts.  *See* N.Y. Crim. Proc. § 440.10(2)(c).  He also cannot overcome the resulting procedural bar because he has not shown any cause for failing to raise the claim and because, for substantially the same reasons discussed above, the claim would have had little chance of success.  *See Rock v. Arkansas*, 483 U.S. 44, 56 (1987) (state rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve."); *Taylor v. Curry*, 708 F.2d 886, 890-91 (2d Cir. 1983) ("Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue only where petitioner can show that the error deprived her of a *fundamentally* fair trial." (emphasis in original) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-02 (1973))), *cert. denied*, 464 U.S. 1000 (1983).  In the absence of any showing of actual innocence, this claim, too, should be dismissed.

   **B.    Claims Subject To Review by This Court**

The remainder of Petitioner's claims do not appear to have been procedurally defaulted, and this Court will therefore review them on their merits.

   **1.    Alleged Due Process/Equal Protection Violations by the Appellate Division, in Denying Petitioner's Motion To Raise Certain Claims *Pro Se* and To Enlarge the Record (Petitioner's First Claim)**

Petitioner claims that the Appellate Division denied his rights to due process and equal protection by denying his application for leave to raise particular ineffective assistance claims in

his *pro se* supplemental brief on his direct appeal, and for denying his request to enlarge the appellate record with certain grand jury minutes.  (*See* Pet., at Point A.)  After the Appellate Division made its ruling in this regard, Petitioner challenged that ruling on federal constitutional grounds, setting out both due process and equal protection arguments in a motion for reargument or, alternatively, leave to appeal.  (Ex. 19A, at 4.)  Although it appears that Petitioner attempted to withdraw that application (Ex. 19B), and to proceed solely on a motion for reargument (Ex. 20), the Appellate Division nonetheless denied Petitioner leave to appeal (Ex. 21 ("Now, upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon, [i]t is ordered that the motion is denied.")).  Seemingly, then, this claim has been exhausted, and Respondent does not argue otherwise.  Although the unusual procedural posture of this claim makes it unclear whether the AEDPA standard of review should apply, the question of the appropriate standard of review is ultimately of no consequence, as the claim would fail equally under AEDPA or on *de novo* review.

As a threshold matter, there is no "constitutional right to self-representation on direct appeal from a criminal conviction," *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000), and, especially as Petitioner's appellate counsel filed an appellate brief on Petitioner's behalf, it was within the Appellate Division's discretion to deny Petitioner leave to raise certain claims in a *pro se* supplemental brief.  In any event, those same claims had already been addressed by the trial court on Petitioner's first Section 440.10 motion, and then raised before the Appellate Division on Petitioner's application for leave to appeal from the denial of that motion, and thus Petitioner was not deprived of an opportunity to place those claims before the state courts.  (*See* Ex. 10 (finding that, while procedurally barred, the ineffective assistance of counsel claim was also without merit); Ex. 11 (denying leave to appeal).)

30

Furthermore, with respect to Petitioner's request that the Appellate Division enlarge the record to include grand jury minutes, Petitioner does not provide any explanation as to what he believed he would have discovered from a review of the grand jury minutes.  (*See* Pet., at Point B.)  As there is no reason to believe that he would have discovered any new exculpatory evidence, review of the grand jury minutes would, at most, have revealed defects in the process by which Petitioner was indicted.  Yet challenges concerning a state grand jury proceeding "are *a fortiori* foreclosed in a collateral attack brought in federal court," where, as here, the petitioner was convicted by a jury.  *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).  Consequently, Petitioner's claim based on the Appellate Division's denial of his request to enlarge the record does not implicate a federal constitutional right, and is not cognizable on federal habeas review. *See Jansen v. Monroe County*, 430 F. Supp. 2d 127, 129-30 (W.D.N.Y. 2006) (dismissing claim that Appellate Division violated petitioner's due process rights by denying request for access to grand jury minutes as not cognizable where petitioner had been convicted by a jury); *Clarke v. Mazzuca*, No. 00 Civ. 2871(WHP), 2002 WL 1837367, at *6 (S.D.N.Y. Aug. 6, 2002) (dismissing claim based on state court's failure to turn over grand jury minutes because, *inter alia*, there is no federal constitutional right to discovery in a criminal case).

Under the circumstances, Petitioner has not shown that the Appellate Division committed any constitutional error, much less that its rejection of Petitioner's due process and equal protection claims was contrary to, or an unreasonable application of federal law.  I therefore recommend that this claim be dismissed.  *See* 28 U.S.C. § 2254(d).

2.    **Alleged Denial of the Right to Be Present**
**at All Critical Stages of the Proceedings**
**(Petitioner's Second Claim)**

Petitioner asserts that he was denied the right to be present at all critical stages of the proceedings against him.  Specifically, he complains that he was not present (1) when the court gave admonitions to the jury when the trial was adjourned due to illness of Petitioner's attorney (*see* Pet., at 69-71); and (2) at a pretrial proceeding when a motion was discussed by the court, the prosecutor, and his trial attorney (*see id.* at Point B).

Petitioner raised both aspects of this claim on direct appeal – the first in the brief submitted by his appellate counsel on his behalf (*see* Ex. 12), and the second in Petitioner's *pro se* supplemental brief (*see* Ex. 16, at 5) – and the Appellate Division rejected both portions of the claim on the merits.  As to the first part of Petitioner's claim, the Appellate Division explained that the announcement of an adjournment and giving of admonitions by the trial judge to the jury outside the presence of Petitioner did not violate his right to be present.  (Ex. 18.)  As to the second, the Appellate Division stated that it had "considered and rejected the claims contained in defendant's pro se supplemental brief" (*id.*), which is considered a "merits" determination for purposes of federal habeas review, *see Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004) (holding that where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" such a rejection is on the merits and AEDPA deference applies).  Petitioner then fully exhausted both parts of his claim by seeking leave to appeal to the Court of Appeals on all of the claims he had raised to the Appellate Division, whether in the brief filed by his appellate counsel or in his supplemental brief.  (Ex. 23.)  Thus, the claim is now subject to review under AEDPA.

*See* 28 U.S.C. § 2254(d).  Under the relevant AEDPA standard, however, Petitioner cannot prevail on this claim.

A criminal defendant is entitled "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819-20 n.15 (1975); *see also Rushen v. Spain*, 464 U.S. 114, 117-18 (1983) (right to personal presence at all critical stages of the trial is a "fundamental right[] of each criminal defendant"). This right is "scarcely less important to the accused than the right of trial itself," *Diaz v. United States*, 223 U.S. 442, 455 (1912), and is rooted in both the Sixth Amendment Confrontation Clause and the Due Process Clause, *United States v. Gagnon*, 470 U.S. 522, 526 (1985); *see also Illinois v. Allen*, 397 U.S. 337, 338 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial.") (citing *Lewis*); *Snyder v. Massachusetts*, 291 U.S. 97, 107-08 (1934) ("[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence."), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964).

Nevertheless, the right to be present is not absolute; it is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder*, 291 U.S. at 105-06.  In defining a criminal defendant's right to be present, the Supreme Court has emphasized that the right "is guaranteed . . . if [the defendant's] presence would contribute to the fairness of the procedure," but that the right "is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder*, 291 U.S. at 106-07).  A defendant's exclusion from any aspect of the trial "should be considered in light of the whole record."

*Gagnon*, 470 U.S. at 526-27 (citing *Snyder*, 291 U.S. at 115).  Where nothing in the record

indicates that the defendant's absence compromised the fundamental fairness of the trial

proceedings, no violation of the right to be present has occurred.  *See Stincer*, 482 U.S. at 36-47

(rejecting challenge to defendant's exclusion, over objection, from witness competency hearing);

*Gagnon*, 470 U.S. at 527 (rejecting challenge to defendant's exclusion, without objection, from

*in camera* discussion between trial judge and juror); *Snyder*, 291 U.S. at 106-22 (rejecting

challenge to defendant's exclusion, over objection, from jury inspection of crime scene).

In this case, the absence of Petitioner during the admonitions to the jury following an

adjournment of trial and at a pretrial hearing were not errors of constitutional magnitude, such

that the fundamental fairness of Petitioner's trial was compromised.

### a.        Admonitions to Jury Following Adjournment During Trial

On October 16, 2002, the trial judge, outside the presence of defense counsel, the

prosecutor, and the jury, informed Petitioner that his attorney had notified the court that he was

ill and would not be able to come to court that day.  (Trial Tr., at 76-77.)  The trial judge

informed Petitioner that the case would be adjourned until October 18, and that the jury would

be informed about the medical emergency and adjournment outside the presence of any of the

attorneys or Petitioner.  (*Id.*)  The trial judge, outside the presence of any of the attorneys or

Petitioner, informed the jury that "[o]ne of the parties had a medical emergency this morning,

and they telephoned early this morning.  We were trying to determine how long it was going to

take in terms of doctors, etcetera and it's gonna take most of today."  (*Id*. at 78-79.)  The trial

judge explained that trial would be adjourned, but that jurors would get "credit" for that day, and

delivered the following admonishments:

> Do not visit the scene of the incident.  Do not discuss the case
> among yourselves [or] with any friends or relatives.  If you happen
> to see the parties, the defendant, etcetera, no conversations with
> them.  Don't read anything in the paper, listen to anything about it
> on the radio.

(*Id*. at 79-80.)

The Supreme Court noted in *Gagnon* that

> the mere occurrence of an *ex parte* conversation between a trial
> judge and a juror does not constitute a deprivation of any
> constitutional right.  The defense has no constitutional right to be
> present at every interaction between a judge and a juror, nor is
> there a constitutional right to have a court reporter transcribe every
> such communication.

*Gagnon*, 470 U.S. at 526 (internal quotations omitted).  In this instance, as in *Gagnon*, "[t]he

encounter . . . was a short interlude in a complex trial," and Petitioner "could have done nothing"

had he been present during this ministerial proceeding, "nor would [he] have gained anything by

attending."  *Id.* at 527 (citing *Snyder*, 291 U.S. at 108).  Petitioner does not make any argument

that the admonitions differed from those given to the jury, in his presence, each time the trial was

adjourned for the day.  (*See* Trial Tr., at 45-46, 74, 158, 201, 218, 237, 331.)  Petitioner argues

that he was prejudiced because the jury "was left to wonder if [P]etitioner was the cause of their

inconvenience."  (Pet., at 71.)  By announcing the adjournment and giving admonitions outside

the presence of counsel and Petitioner, however, the trial court actually prevented any prejudice

that could have arisen had the jury been aware that the delay was caused by Petitioner's counsel.

Overall, based on the full trial record, Petitioner's absence did not compromise the fundamental

fairness of his trial.

**b.      Pretrial Hearing Addressing *Pro Se* Motion**

Petitioner also claims that his right to be present at all material stages was violated when the state court, outside his presence, denied his *pro se* request for a *Mapp* hearing based on a lack of factual allegations, but granted him leave to file additional supporting factual allegations within two weeks.  (Pet., at Point B.)  Petitioner claims that he did not learn of the court's decision until several months later, by which time he had missed the deadline to make an additional submission.  (*Id.*)

As a threshold matter, though, a criminal defendant has no constitutionally protected right to be present at a hearing involving scheduling matters and/or legal issues.  *See Russo v. Zon*, No. 05 Civ. 0298T, 2009 WL 3614527, at *9 (W.D.N.Y. Oct. 26, 2009).  Moreover, Petitioner has not come forward with any evidence to suggest that, had he made the additional submissions invited by the court, the court would have been likely to grant a *Mapp* hearing and ultimately to find that evidence was obtained in violation of Petitioner's right to be free from unreasonable search and seizure.  Indeed, as explained below (*see infra* at 39-40), Officer Rivera had probable cause to arrest Petitioner, and, apart from questioning the legality of his arrest (*see* Pet., at Point B; *see also id.* at 55-61), Petitioner has offered no other basis for the suppression of any evidence under *Mapp*.[18]

For these reasons, the Appellate Division's denial of Petitioner's claim that he was denied the right to be present at all critical stages of the litigation was neither contrary to, nor an

---

[18] To the extent Petitioner's trial counsel failed to inform him regarding decisions and deadlines in his case, an ineffective assistance claim on that basis would be unexhausted and, in any event, fail on the merits, as Petitioner cannot show sufficient prejudice.  (*See infra* at 38-39.)

unreasonable application of, established federal law.  *See* 28 U.S.C. § 2254(d).  Accordingly, I recommend that this claim be dismissed.

### 3.   Alleged Ineffective Assistance of Trial Counsel (Petitioner's Fourth Claim)

For his fourth habeas claim, Petitioner asserts that he was denied the effective assistance of trial counsel in a number of ways.  Apart from the one (unexhausted) portion of this claim that is addressed above (*see supra* at 26-28), Petitioner complains that his trial counsel:

(1)   failed to provide meaningful representation during pretrial proceedings;

(2)   failed to move to secure a speedy trial;

(3)   failed to preserve an objection to the introduction of Clark's plea allocution;

(4)   created a conflict of interest by stipulating to the accuracy of a transcript of Clark's plea allocution; and

(5)   was not prepared for trial.

(*See* Pet., at 18-42.)

The first ground was raised in both of Petitioner's Section 440.10 motions; the remainder were raised in Petitioner's second Section 440.10 motion.  As set out above, the trial court denied the first of Petitioner's motions on both procedural grounds and the merits (*see supra* at 6-7), and it is not immediately clear whether there was also a procedural basis for the court's second decision, in addition to its evident merits analysis (*see supra* at 9-10).  Respondent, though, does not argue that any part of Petitioner's ineffective assistance of trial counsel claim should be considered barred on independent and adequate state procedural law grounds, and thus the Court considers that argument to have been waived.  *See Trest v. Cain,* 522 U.S. 87, 89 (1997) (noting that the existence of an independent and adequate state procedural bar is "a

37

defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter"). In any event, Petitioner's ineffective assistance claim (including each of its sub-parts) is subject to dismissal on the merits.

The right to counsel in criminal prosecutions is grounded in the Sixth Amendment. Because the Constitution "envisions counsel playing a role that is critical to the ability of the adversarial system to produce just results[,] . . . 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland*, 466 U.S. at 685-86 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Counsel can deprive a criminal defendant of this right "simply by failing to render 'adequate legal assistance.'" *Id.* at 686 (citation omitted).

In order for counsel to be deemed constitutionally "ineffective," however, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. Thus, to prevail on an ineffective assistance claim under *Strickland*, a criminal defendant must show that: (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. A court may reject an ineffective assistance of counsel claim for failure to satisfy either prong of the *Strickland* standard, without reaching the other. *See id.* at 697. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

For purposes of habeas review under AEDPA, *Strickland* sets out the relevant "clearly established federal law." *Aparicio v. Artuz,* 269 F.3d 78, 95 and n.8 (2d Cir. 2001) ("It is beyond cavil that the *Strickland* standard qualifies as 'clearly established Federal law.'") (citation omitted). Yet, as "the standards created by Strickland and § 2254(d) are both highly

deferential, . . . when the two apply in tandem, review is doubly so." *Harrington*, 131 S. Ct. at 788 (internal quotations omitted).  Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### a.    Failure To Provide Meaningful Representation During Pretrial Proceedings

Petitioner asserts that his counsel did not provide meaningful representation during pretrial proceedings because his counsel (1) failed to seek relief based on a claim that Officer Rivera lacked probable cause to arrest Petitioner, (2) failed to raise an adequate challenge to the suggestiveness of the lineup; and (3) failed to conduct sufficient investigations or spend adequate time meeting with Petitioner.  (*See* Pet., at 19.)  Petitioner, however, cannot establish that any such failures actually prejudiced his defense.

First, based on the record before the Court, there was probable cause for Petitioner's arrest and, consequently, any motion based on a lack of probable cause would have been unsuccessful.  Petitioner concedes that Officer Rivera learned, through a radio bulletin, of a robbery in progress involving two black men in a green Ford Explorer with license plate number CT-400J.  (*Id.* at 26.)  Officer Rivera pulled over Petitioner and Clark (a black woman) in a black Ford Explorer bearing that same license plate number.  (*Id.*)  Further, Officer Rivera testified that a gun was in plain view on the rear seat.  (Trial Tr., at 66-67.)

Although Petitioner contends that Officer Rivera lacked probable cause because he did not personally receive the information, the reliability of information conveyed by a radio bulletin may be assumed by a police officer in the field.  *See People v. Dodt*, 61 N.Y.2d 408, 416 (1984).  Moreover, although, as Petitioner notes, there were discrepancies between the information

reported in the bulletin and the facts discovered by Officer Rivera (*i.e.,* the gender of the occupants and the color of the vehicle), the similarities, coupled with the gun being in plain view, were more than sufficient to support a finding of probable case for Petitioner's arrest. *See People v. Fleming*, 884 N.Y.S.2d 477 (2d Dep't 2009) (finding that police had probable cause to arrest defendant once they observed a gun in plain view in back seat of a vehicle, after stopping the vehicle based on a license plate number provided by a witness who saw the vehicle drive away after a robbery). As Petitioner cannot show any prejudice arising from his trial counsel's failure to pursue this theory, this Court has no reason to disturb the rejection of Petitioner's ineffective assistance claim. *See Mosby v. Senkowski*, 470 F.3d 515, 524-25 (2d Cir. 2006) (rejecting claim that counsel was ineffective for failing to move for suppression, where the petitioner could not demonstrate a likelihood of success on such a motion); *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) ("Counsel certainly is not required to engage in the filing of futile or frivolous motions.").

Second, with respect to the lineup, Petitioner's trial counsel actually sought to suppress the lineup identification, arguing, *inter alia*, that the lineup was unduly suggestive as Petitioner was the oldest and tallest participant. (*See* 6/5/01 Tr., at 33-37.) Petitioner argues, however, that trial counsel should have raised other differences among the participants, including hairstyle and facial hair, which Petitioner contends were accentuated by the fact that all of the participants wore red baseball caps. (*See* Pet., at 31.) The decision by counsel to focus on certain characteristics in arguing that the lineup was unduly suggestive may, however, be considered sound trial strategy, and thus cannot be viewed as constitutionally deficient. *See McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) ("[A]ctions or omissions that might be regarded

as sound trial strategy do not amount to ineffective assistance."); *United States v. Berkovich*,
168 F.3d 64, 67 (2d Cir. 1999) (same).

Third, Petitioner's conclusory allegations are insufficient to establish that his counsel in
fact failed to investigate or to spend sufficient time meeting with Petitioner, or that any such
failure actually prejudiced his defense.  *See, e.g., Brinkley v. Lefevre*, 621 F.2d 45, 46
(2d Cir. 1980) ("Infrequency of visitation is not alone enough to demonstrate ineffectiveness of
counsel.") (citation omitted); *United States ex rel. Testamark v. Vincent*, 496 F.2d 641
(2d Cir. 1974) (rejecting claim of ineffective assistance based on infrequent visitation by
counsel); *Bingham v. Duncan*, No. 01 Civ. 1371 (LTS), 2003 WL 21360084, at *4 (S.D.N.Y.
June 12, 2003) ("[P]etitioner's conclusory allegations regarding trial counsel's failure to do
investigative work and to contact potential witnesses do not establish that the result of the
proceedings would have been different if not for counsel's error – or even that his behavior was
erroneous at all."); *Polanco v. United States*, Nos. 99 Civ. 5739, 94 Cr. 453 (CSH),
2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) ("[W]holesale and vague accusations are
patently insufficient to meet the *Strickland* standard.").

### b.     Failure To Move To Dismiss on Speedy Trial Grounds

Petitioner's argument that his counsel was ineffective for failing to move to dismiss on
speedy trial grounds is similarly unavailing, as Petitioner has failed to demonstrate that such a
motion would likely have succeeded.  The right of an accused to a speedy trial is guaranteed by
the Sixth Amendment and is imposed upon the states by the Due Process Clause of the
14th Amendment.  *See Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  Specifically, the
Sixth Amendment provides, in relevant part, that, "[i]n all criminal prosecutions, the accused
shall enjoy the right to a speedy and public trial."  U.S. Const. Amend. VI.  The speedy trial

provision "has no application until the putative defendant in some way becomes an 'accused,'" *i.e.,* when a putative defendant has been indicted or actually detained. *United States v. Marion*, 404 U.S. 307, 313, 320 (1971). In determining whether a "particular defendant has been deprived of his right" to a speedy trial, the Court must balance four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Further, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530.

In this case, Petitioner was arrested on December 2000, and his trial commenced in November 2002. While a delay of nearly two years may be viewed as presumptively prejudicial, the other *Barker* factors weigh against dismissal. *See United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (suggesting that any delay over eight months is presumptively prejudicial, but rejecting speedy trial claim where government sought delay to encourage codefendant to testify against defendant, case was complex, and delay did not alter defense). Petitioner concedes that much of the delay was attributable to locating Officer Horn, who had apparently retired and moved to Florida, and securing his appearance for trial (*see* Pet., at 32-33), and Petitioner has offered nothing to support his contention that this was merely a "delay tactic" by the prosecution, *see Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay."). Nor has Petitioner identified any prejudice caused by the delay. Petitioner suggests that Assan had significant lapses of memory (*see* Pet., at 32-33), but there is nothing to suggest that the slight discrepancies between Assan's testimony and the testimony of the other witnesses were due to memory loss.

Likewise, Petitioner has failed to demonstrate that his trial counsel was ineffective for failing to raise any state-law speedy trial claim, as any such claim would also have been flawed. Under New York law, a motion to dismiss must be granted if the State is not ready for trial within six months of the commencement of a criminal action. N.Y. Crim. Proc. § 30.30(1)(a). The limitation period is tolled under certain circumstance, such as where a continuance is granted at the request of the prosecution "because of the unavailability of evidence material to the people's case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period." N.Y. Crim. Proc. § 30.30(4)(g). Here, Petitioner has failed to demonstrate that any delay beyond six months was not excludable under relevant tolling provisions.

Based on the foregoing, Petitioner has not demonstrated that a speedy trial motion was likely to have been successful. Indeed, on direct appeal, the Appellate Division denied Petitioner's claim (raised in his *pro se* supplemental brief) that he was denied his right to a speedy trial. (Ex. 18.) Thus, it cannot be said that Petitioner's counsel's conduct, in failing to make such a motion, fell below acceptable standards. *See Boyd v. Hawk*, 965 F. Supp. 443, 450 (S.D.N.Y. 1997) ("If a speedy trial motion likely would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective assistance.").

**c.  Failure To Preserve Objection to the
Admission of Clark's Plea Allocution**

Petitioner argues that his counsel was ineffective for withdrawing his objection to the admission of Clark's plea allocution and failing to raise an objection to its admission on federal constitutional grounds. (*See* Pet., at 35-41.) As the Appellate Division found (Ex. 18), and as further noted above (*see* n.15 *supra*), even if Clark's plea allocution was admitted in error, the

error was harmless.  Further, to the extent Petitioner suggests that trial counsel should have moved to redact the plea allocution to remove any reference to an accomplice, Petitioner cannot overcome the presumption that, under the circumstances, this decision might be considered sound trial strategy.  By allowing the full plea allocution to be admitted, trial counsel was able to argue in summation that Clark "never names anybody and she certainly doesn't name [Petitioner] at all."  (Trial Tr., at 284; *see Jennings v. United States*, No. 04 Civ. 9741 (SHS), 2005 WL 1387987, at *8 n.6 (S.D.N.Y. June 6, 2005) (denying ineffective assistance of trial counsel claim based on counsel's consent to the admission of codefendant's plea allocution in part because it was based on a strategic decision).

### d.    <u>Stipulation as to Accuracy of Clark's Plea Allocution</u>

Petitioner claims that his counsel "created a conflict of interest" by stipulating as to the accuracy of the written transcription of Clark's plea allocution without Petitioner's consent.[19] (Pet., at 42.)  Petitioner cannot establish that his trial counsel was objectively unreasonable to enter into this stipulation.  Petitioner's lawyer objected to the accuracy of a date in the transcript of the allocution (Trial Tr., at 238-39), and there is nothing to suggest that the transcript was in any other way inaccurate.  Moreover, "[e]ntering into a stipulation is a strategic decision that defense counsel may make on the defendant's behalf.'"  *Horan v. Conway*, No. 9:03-CV-0486 (LEK) (DEP), 2007 WL 1087492, at *10 (N.D.N.Y. Apr. 9, 2007) (quoting *Goicochea-Melchor v. United States*, No. 99 CIV. 729 (JGK), 1999 WL 804146, at *5 (S.D.N.Y. Oct.7, 1999))

---

[19] Although Petitioner argues that this stipulation was somehow the "functional equivalent" of a guilty plea (Pet., at 50), it is clear from the trial transcript that the stipulation was limited to the accuracy of the transcript (*see* Trial Tr., at 228 ("It is hereby stipulated by and between the parties that People's 16 in Evidence is a true and accurate transcription of the plea allocution of Michelle Clark.")).

(noting that entering into a stipulation without first obtaining a defendant's consent "does not amount to *per se* ineffective assistance of counsel").

### e. <u>Failure To Prepare for Trial</u>

Petitioner claims that his trial counsel failed to prepare for trial. (*See* Pet., at 34.) As background, Petitioner notes that, prior to *voir dire*, his attorney moved to withdraw because his mother was ill and he would need to travel to Florida to admit her into a nursing home. (Transcript, dated Oct. 8, 2002 (Dkt. 8), at 15-17.) Counsel stated:

> I cannot proceed with a clear mind and concentrate on this case. I will not be able to proceed with a clear mind and concentrate on this case. I will not be able to proceed with a clear mind. I will not be able to do the best defense and I have to put that on the record for this Court.

(*Id*. at 17.) The trial court denied the motion, but stated that it would "work with" counsel in terms of scheduling. (*Id*. at 43-44.)

This Court has reviewed the trial proceedings and agrees with the general finding of the trial court (made upon the denial of both of Petitioner's Section 440.10 motions), that "[t]here was and is nothing to suggest that trial counsel provided the defendant with anything other than skilled and effective representation." (Ex. 27; *see also* Ex. 10 (same).)  Not only does each of Petitioner's specific arguments regarding counsel's conduct fail on its merits, but, "[c]onsidering the totality of the circumstances, at the time, and assessing trial counsel's representation as a whole, it cannot be said that trial counsel's representation of the petitioner was objectively unreasonable such that the petitioner was denied the effective assistance of counsel." *Cotto v. Lord*, No. 99 Civ. 4874 (JGK), 2001 WL 21246, at *17-18 (S.D.N.Y. Jan. 9, 2001) (noting need to view trial counsel's representation "as a whole").

For all of the above reasons, the denial of Petitioner's claim that he received ineffective assistance of trial counsel was neither contrary to, nor an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d).  I therefore recommend that this claim – with the exception of Petitioner's unexhausted argument that counsel was ineffective in seeking the admission of Clark's video tape confession (*see supra* at 26-28) – be dismissed as without merit.

### 4.   Alleged Ineffective Assistance of Appellate Counsel
### (Petitioner's Fifth Claim)

Petitioner contends that his appellate counsel was ineffective for failing to argue that Petitioner's trial counsel was ineffective.  (Pet., at 48.)  Petitioner fully exhausted this claim by raising it in a state *coram nobis* proceeding, and by then seeking leave to appeal the denial of his claim to the Court of Appeals.  As the Appellate Division rejected the claim on the merits, this Court now reviews the claim under AEDPA.  (*See* Ex. 31; *Francolino*, 365 F.3d at 141.)

Under the *Strickland* test (which applies to appellate counsel, as well as trial counsel, *see Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)), appellate counsel does not have a duty to advance every available nonfrivolous argument on appeal, *see Jones v. Barnes*, 463 U.S. 745, 754 (1983).  A petitioner, however, may demonstrate that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  A federal or a state-law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the . . . claim fell outside the wide range of professionally competent assistance."  *Id.* (quotations omitted).  Deference is accorded to an appellate counsel's strategic decision to focus an appeal on select issues, instead of raising every potentially "colorable" claim.  *Jones*,

463 U.S. at 753-54.  This is because "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues."  *Id.* at 751-52.  A brief that raises every colorable claim "runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions."  *Id.* at 753 (citations omitted).

Here, Petitioner's appellate counsel raised two claims on behalf of Petitioner in the direct appeal:  Counsel argued that (1) the admission of Clark's plea allocution violated Petitioner's Confrontation Clause rights; and (2) Petitioner's right to be present was violated when the trial court admonished the jury outside of Petitioner's presence.  (*See* Ex. 12.)  Appellate counsel was not ineffective for failing to raise a claim based on ineffective assistance of trial counsel.  As explained above (*see supra* at 37-46), such a claim was not likely to have succeeded.  Appellate counsel cannot be found ineffective for omitting a claim which had no likelihood of success on appeal, and a petitioner cannot be prejudiced as a result of appellate counsel's failure to raise meritless claims.  *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that [his] claim would have been successful.") (internal quotation omitted).

As the Appellate Division's rejection of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law, I recommend that this claim be dismissed.  *See* 28 U.S.C. § 2254(d).

**5.      Sufficiency of the Evidence of
      <u>Attempted Robbery in the First Degree</u>
      (Petitioner's Sixth Claim)**

Petitioner claims that there was insufficient evidence to prove the elements of attempted robbery in the first degree beyond a reasonable doubt.  (*See* Pet., at 62.)  Petitioner raised this

claim in the *pro se* supplemental brief he filed on his direct appeal.  (*See* Ex. 16, at 37-29.)  The Appellate Division rejected the claim on the merits, and Petitioner exhausted the claim by seeking leave to appeal to the Court of Appeals.  (*See supra* at 32.)  Accordingly, the Court reviews this claim under the standard of review set forth in AEDPA.  *See* 28 U.S.C. § 2254(d).  Under that deferential standard, the claim should be dismissed, even though, if this Court were considering the claim *de novo,* the Court would recommend a different result.

Under established Supreme Court law, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  Such an inquiry "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* at 318-19 (emphasis in original) (citations omitted).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also United States v. Carson*, 702 F.2d 351, 361 (2d Cir. 1983) (a court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt . . . view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor") (internal citations omitted), *cert. denied sub nom. Mont v. United States*, 462 U.S. 1108 (1983).

In making this determination, "pieces of evidence must be viewed in conjunction, not in isolation." *United States v. Podlog*, 35 F.3d 699, 705 (2d Cir. 1994) (citation omitted), *cert.*

*denied sub nom. Romano v. United States*, 513 U.S. 1135 (1995).  It is also not enough for a petitioner to show that the evidence had inconsistencies.  *See, e.g.*, *United States v. Vasquez*, 267 F.3d 79, 91 (2d Cir. 2001).  "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (quoting *Williams*, 529 U.S. at 326).  In fact, "[t]he testimony of a single uncorroborated witness is sufficient to achieve a showing of guilt beyond a reasonable doubt even if that witness's testimony is less than entirely consistent."  *Means v. Barkley*, No. 98 Civ. 7603 (DLC), 2000 WL 5020, at *4 (S.D.N.Y. Jan. 4, 2000) (internal citations omitted).

In this case, Petitioner argues, in particular, that the evidence adduced at his trial was insufficient to permit a rational jury to conclude that he had "displayed a firearm," an element of attempted robbery in the first degree, under Section 160.15[4] of the New York Penal Law.  *See People v. York*, 134 A.D.2d 637, 638 (2d Dep't 1987).  As the New York Court of Appeals has explained, "[t]he defendant must consciously display something that could reasonably be perceived as a firearm with the intent of compelling an owner of property to deliver it up or for the purpose of preventing or overcoming resistance to the taking," and "the display must actually be witnessed in some manner by the victim, *i.e.*, it must appear to the victim by sight, touch or sound that he is threatened by a firearm."  *People v. Baskerville*, 60 N.Y.2d 374, 381 (1983) (citations omitted); *see also People v. Lopez*, 73 N.Y.2d 214, 222 (1989) ("All that is required is that the defendant, by his actions, consciously manifest the presence of an object to the victim in such a way that the victim reasonably perceives that the defendant has a gun.").  The Court of Appeals has reasoned that, unlike other aggravating factors in the robbery statute that address the

danger of actual harm to the crime victim (*e.g.*, the "deadly weapon" and "dangerous instrument" provisions), the "displayed what appeared to be a firearm" provision is premised on the "effect upon the victim [of being] put in fear of his or her life by the display." *Baskerville*, 60 N.Y.2d at 756.[20]

Petitioner argues that, here, there was no evidence that Assan, the victim of the charged crime, reasonably perceived what appeared to be a firearm.[21]  (*See* Pet., at 62.)  As Petitioner notes, and as Respondent concedes (Resp. Mem., at 52), on both direct and cross-examination, Assan testified that he never saw a gun:

> Q.     Did you ever see the defendant have a gun that night.
>
> A.     No, I never saw the gun.

(*Id.* at 16.)

> Q.     And you said, on the district attorney's direct examination, you never saw a gun either?
>
> A.     No, I never saw the gun.

(*Id.* at 48.)

---

[20] The prosecution appears to have sought to elevate the attempted robbery charge to the first degree based only on the "displayed what appeared to be a firearm" aggravating factor, N.Y. Penal Law § 160.15[4] (*e.g.*, the prosecution did not rely on the "deadly weapon" or "dangerous instrument" provisions under N.Y. Penal Law § 160.15[2], [3]).  (*See, e.g.*, Ex. 6 (pretrial court denying Petitioner's motion to dismiss the indictment and noting that Petitioner was indicted and charged with, *inter alia*, attempted robbery in the first degree under N.Y. Penal Law § 110, 160.15[4]); Trial Tr., at 320 (jury charge that, to find Petitioner guilty of attempted robbery in the first degree, the prosecution had to prove beyond a reasonable doubt that, *inter alia*, "the defendant or another person or participant in the crime displayed what appeared to be a shotgun").)

[21] Petitioner does not appear to have been charged with attempted robbery, or any other crime, against Martinez.  (*See* Trial Tr., at 320-22; Ex. 5.)

> Q.   And so he never pointed a gun; just said he needed
>      something, and it was a man without a mustache and a
>      goatee in a green Ford Explorer?
>
> A.   Yes.

(*Id*.)

> Q.   And the other one, just to reiterate – sorry to beat a dead
>      horse – but just so the jury understands – the one you saw
>      was a goatee, no mustache, green Explorer and no shotgun,
>      no firearm.  You never saw a firearm?
>
> A.   No, sir.

(*Id*. at 49.)

There is also no evidence in the trial record that Assan saw Petitioner put his hand inside a shirt, jacket, or pocket, giving the suggestion that a firearm was hidden underneath.  *See, e.g., Lopez*, 73 N.Y.2d at 221-22 (finding that the fact that robbery victim only saw defendant move his hand inside his jacket, but did not see a gun, was sufficient to find that defendant displayed what appeared to be a firearm); *People v. Broadhead*, 579 N.Y.S.2d 135, 136 (2d Dep't 1992) ("[D]espite the absence of any language specifically announcing the possession of a firearm, the defendant consciously displayed the object in his pocket when he reached into his bulky pocket, under such circumstances that the victims reasonably perceived that he had a handgun.").  Nor is there evidence in the record that Assan felt a gun pressed to his body or heard a gunshot.  *See York*, 521 N.Y.S.2d at 638-39 (1987) (reversing conviction for first degree robbery where the victim testified that "she had not observed a gun in the defendant's possession and had not heard anything"); *see also People v. Slater,* 786 N.Y.S.2d 602 (3d Dep't 2004) (finding sufficient evidence to support conviction for first degree robbery where, although the victim did not testify at trial, there was other proof from which jury could reasonably infer that victim perceived the

defendant was armed with a gun, including testimony of two codefendants that they saw defendant enter store with a gun, put his hand around victim's neck, point the gun to his head, and fire shot past victim's head).  Not only did Assan offer no testimony to the effect that he felt or heard a gun, but the record suggests, to the contrary, that he was closeted in a space that physically separated him from Petitioner and that made it difficult for him to hear anything that was transpiring.  (*See* Trial Tr., at 8-13.)

There is no question that the trial record did contain testimony that Petitioner was holding a gun, which was seen by at least one other person during the robbery.  (*Id*. at 206.)  Yet, as there was *no* basis for the jury to conclude that the *victim* of the crime – Assan – saw, heard, or was touched by the firearm or anything he believed to be a firearm, there is a serious question in this case as to whether a rational juror could conclude that the prosecution satisfied its burden of proving the element of "display" beyond a reasonable doubt.  Indeed, based on existing New York precedent on this point, it is this Court's view that the Appellate Division – which did not explain its reasoning on this claim – committed constitutional error by allowing Petitioner's conviction for first-degree attempted robbery to stand.

The Supreme Court has emphasized, however, that, under AEDPA, even "clear error" by a state court is not sufficient to warrant habeas relief.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  Rather, as noted above, "[a] state court's determination that a claim lacks merit precludes federal habeas review so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Williams*, 529 U.S. at 410 ("[A]n unreasonable application of federal law is different from an incorrect application

of federal law."). While this can make this Court's task a difficult one, "AEDPA's standard was meant to be difficult," as the Second Circuit has recently observed. *Byrd v. Evans*, No. 09–5309–pr, 2011 WL 941615, at *2 (2d Cir. Mar. 21, 2011) (citing *Harrington*).

In this case, Assan testified that, while he did not directly see a gun, he *did* see Martinez raise his hands in the air, at which point he realized that a robbery might be in progress, so he closed the door to his enclosed cashier booth, and he called 911. (Trial Tr., at 17.) The New York courts have never squarely addressed whether, from testimony that the victim saw a bystander raise both hands in the air (and, as a result, called 911), a rational juror could infer that the victim had perceived that the defendant had displayed a firearm. Based on existing state precedent, as discussed above, it appears to this Court that the lack of the victim's perception of the firearm by seeing, hearing, or feeling it (or by seeing, hearing, or feeling something reasonably believed to be a firearm) would be fatal to the prosecution's case. Nonetheless, a fairminded jurist could disagree, and could conclude that all that is necessary under New York law to satisfy the element of "display" of a firearm is the victim's "reasonable perception" that the defendant had a gun, *see Lopez,* 73 N.Y.2d at 222, a perception which, in this case, plausibly could have been inferred by the jury from what Assan did witness, *cf. Ball v. State*, 347 Md. 156, 191-192 (1997) ("The eyewitness said he saw the attendant's hands in the air, from which a jury could infer that the men holding up the station were using a deadly weapon.").

As this Court has not found any prior New York Court of Appeals decision confronting an analogous set of facts, and as fairminded jurists could differ as to how New York law should be applied on these facts, this Court cannot conclude that, in rejecting Petitioner's claim, the Appellate Division committed an error "well understood and comprehended in existing law." *Harrington*, 131 S. Ct. at 785. Accordingly, under that deferential AEDPA standard, this Court

is constrained to recommend that Petitioner's claim be dismissed, even though this Court would independently conclude, were the claim before it on *de novo* review, that the Appellate Division erred in this instance.

### 6. Claimed Due Process Violation Based on Allegedly Inadequate Sanction for Destruction of Evidence (Petitioner's Seventh Claim)

Petitioner claims that his right to due process was violated when the trial court sanctioned the prosecutor for the destruction of the tape recording of the 911 call by precluding the prosecution from introducing a written record of the call (10/8/02 Tr., at 47), and by giving the jury an adverse inference charge (Trial Tr., at 311), rather than by dismissing the case altogether. (*See* Pet., at 65.)  Petitioner raised this claim in his *pro se* supplemental brief on his direct appeal.  (*See* Ex. 16.)  As explained above, all of the claims raised in Petitioner's *pro se* supplemental brief were exhausted, and should be considered to have been denied on the merits by the Appellate Division.  (*See supra* at 32.)  Thus, the Court reviews this claim under AEDPA. *See 28* U.S.C § 2254(d).

Under Supreme Court law, to establish a due process violation where evidence has been lost, a defendant generally must show that the State acted in "bad faith" in failing to preserve the evidence.  *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) ("[U]nless a criminal defendant can show bad faith . . ., failure to preserve potentially useful evidence does not constitute a denial of due process."); *accord Colon v. Kuhlmann*, 865 F.2d 29, 30 (2d Cir. 1988); *Brock v. Artuz*, No. 99 Civ. 1903 (AJP), 2000 WL 1611010, at *8 (S.D.N.Y. Oct. 27, 2000).[22]  In this case, Petitioner argues that the fact that the 911 tape was destroyed before the prosecutor

---

[22] Petitioner does not claim that the 911 tape contained exculpatory *Brady* material.  *See Youngblood*, 488 U.S. at 57 (differentiating the standard for failure to preserve *Brady* material).

requested a copy of the tape shows that Respondent or its agents acted in bad faith.  (*See* Pet.,

at 67.)  Petitioner's speculation, however, is not sufficient to show bad faith, and this is fatal to

his claim.  *See United States v. Rastelli*, 870 F.2d 822, 833 (2d Cir. 1989) (holding that a

"missing evidence claim must fail" where the record was "barren of proof that the government

lost the evidence in bad faith"); *Brock*, 2000 WL 1611010, at *8 (destruction of evidence claim

dismissed where petitioner failed to establish both that missing evidence was "exculpatory" and

that there was any "bad faith on the part of the police or prosecution" in the destruction).

Accordingly, Petitioner has not shown that the state court's rejection of his claim was contrary

to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d).

To the extent Petitioner intends to raise a claim that the 911 tape should have been

produced under New York state law (*see* Pet., at 68 (citing New York state law)), that claim

cannot be reviewed by this Court.  If the prosecution fails to disclose so-called *Rosario* material,

the defendant may be entitled to a reversal of the conviction or some other sanction, depending

on the circumstances of the failure to disclose and the content of the material.  *See People v.*

*Martinez*, 71 N.Y.2d 937, 940 (1988); *see also* N.Y. Crim. Proc. § 240.70.  A claim based on

*Rosario*, however, would be grounded in state case law and statute; as such, it would not be

cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In

conducting habeas review, a federal court is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States.") (citations omitted); *Landy v. Costello*,

141 F.3d 1151 (Table), No. 97-2433, 1998 WL 105768, at *1 (2d Cir. Mar. 9, 1998) ("To the

extent that [Petitioner's] claim is based on a *Rosario* violation, it must fail, because a habeas

petition can only be granted to remedy some violation of *federal* law; the obligation to turn over

*Rosario* material arises under *state* law." (emphasis in original)); *see also Padro v. Strack*,

No. 99 Civ. 4961 (AKH), 2001 WL 394852, at *2 (S.D.N.Y. Apr. 18, 2001) ("[P]etitioner's

claim that the prosecution's failure to provide defense counsel with the surveillance tapes was a

violation of *Rosario* rights is not cognizable under federal review.").

 For these reasons, I recommend that this claim be dismissed.

### 7. Alleged Denial of Right to Counsel at Lineup
  (Petitioner's Ninth Claim)

 Plaintiff claims that his Sixth Amendment right to counsel was violated when a lineup

was conducted without his having the assistance of counsel.  (*See* Pet., at 77.)  The Court also

reviews under ADEPA the Appellate Division's rejection of this claim, which was raised in

Petitioner's *pro se* supplemental brief and exhausted on direct appeal.  (*See supra* at 32.)

 Under clearly established federal law, a defendant may not be placed in a lineup without

the presence of his attorney once the Sixth Amendment right to counsel has attached.  *Wade*,

388 U.S. at 236-38.  The right to counsel, however, "does not attach until a prosecution is

commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether

by way of formal charge, preliminary hearing, indictment, information or arraignment."  *McNeil*

*v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal quotations omitted).  In determining whether

adversarial proceedings have commenced, federal courts look to state law, *see Meadows v.*

*Kuhlmann*, 812 F.2d 72, 76 (2d Cir. 1987), and, under New York law, a criminal action is

commenced by the filing of an accusatory instrument, *see* N.Y. Crim. Proc. § 100.05.

 Here, Petitioner asserts that he was brought to court at 9:00 a.m. on December 19, 2000

at which time an accusatory instrument was filed; that he requested counsel; and that, at

12:25 p.m., he was placed in a court-ordered lineup, without counsel.  (*See* Pet., at 77-78.)  Yet

Petitioner has not submitted anything to support his version of the events of December 19.  To

the contrary, based on the records before this Court (including those that were attached to Petitioner's *pro se* supplement brief in his direct appeal (*see* Ex. 16)), it appears that the accusatory instrument was not filed until after the lineup.  After being arrested at approximately 2:50 a.m. on December 19 (Trial Tr., at 89), Petitioner was placed in a lineup at approximately 4:20 or 4:40 p.m. on that same day (6/5/01 Tr., at 4, 8, 24-26).  According to records from the New York City Police Department, the accusatory instrument was not sworn out until 7:00 p.m., and thus presumably could not have been filed prior to the lineup earlier that afternoon.  (*See* Exs. 33-35.)  Indeed, those records indicate a "docketed" time of 3:00 a.m. on December 20. (*Id*.)  Petitioner was then arraigned around 11:00 a.m. on December 20.  (*Id*.)  Officer Rivera's memo book entries confirm this sequence of events, with slight, but immaterial, discrepancies as to the precise times.  (*See* Ex. 36.)

Given this documentary evidence, this Court cannot find that the Appellate Division's rejection of Petitioner's claim was contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d).  I therefore recommend that Petitioner's right to counsel claim be dismissed.

## **CONCLUSION**

For the foregoing reasons, I recommend that the Petition be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, United States Courthouse, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Castel.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
     April 18, 2011

                        Respectfully submitted,

                        DEBRA FREEMAN
                        United States Magistrate Judge

Copies to:

Hon. P. Kevin Castel, U.S.D.J.

Mr. Phillip A. Taylor
02-R-6212
Riverview Correctional Facility, Route 37
P.O. Box 158
Ogdensburg, NY 13669

Lawrence H. Cunningham, Esq.
Bronx District Attorney Office
198 East 161st Street
Bronx, NY 10451